**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and LAND, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**September 28, 2022**

# In the Court of Appeals of Georgia

A22A0914. SHAUGHNESSY v. THE STATE.

MCFADDEN, Presiding Judge.

After a jury trial, Gary T. Shaughnessy was convicted of multiple counts of child molestation and aggravated sexual battery for acts committed against A. v. when she was eight and nine years old. Shaughnessy argues on appeal that his trial counsel was constitutionally ineffective for failing to cross examine several witnesses. But he has shown neither deficient performance nor prejudice, so we affirm.

1. *Facts.*

Viewed in the light most favorable to the judgment, the trial evidence showed that Shaughnessy was a member of A. V.'s extended family; he attended the same church as her family and he often spent time with them.

Shaughnessy visited A. V.'s house regularly and would spend long periods of time alone with A. V. in her bedroom with the door closed. There, as A. V. testified at trial, Shaughnessy would "touch [her] private and butt" with his fingers, both inside and outside, and he would make her touch his "private" and "butt" with her hands. If A. V. did not spend time with him when he was at the family's house (because, for example, she had a friend visiting), Shaughnessy would sulk, act jealous or angry, and sometimes leave.

Shaughnessy's actions made A. V. feel scared and nervous, and over time a visibly distressed A. V. began telling her parents that she did not want to see Shaughnessy and asking if he had to visit. She began having nightmares in which she would cry out, "Gary, get away. Get away."

Shaughnessy also engaged in behavior, observed by others, that an expert in forensic interviewing described to the jury as "grooming." For example, Shaughnessy frequently gave A. V. gifts such as money, candy, jewelry, and toys. He spoke to A. V. on the phone daily and would get angry if she did not want to talk with him. In public, he would French kiss A. V., caress her leg, and force her to sit on his lap near his crotch, becoming angry if she resisted.

2

In the summer of 2017, when A. V. was nine years old, an incident occurred during a church service that ultimately led to the involvement of law enforcement. During the service, people sitting in the balcony observed A. V. and Shaughnessy in a seat below. A. V. was lying on Shaughnessy with her head near his crotch as Shaughnessy slowly stroked the length of her bare leg. This went on for a period of ten to fifteen minutes. This incident was reported to the church's senior pastor.

One of the people who saw the church incident informed A. V.'s older brother about it, and in a conversation between the siblings A. V. revealed to her brother what Shaughnessy had been doing. Around the same time, A. V.'s Sunday school teacher observed the girl acting unusually withdrawn and asked how she was feeling. In the conversation that followed, A. V. revealed that Shaughnessy made her do "inappropriate things," and on further questioning she stated that he "makes [her] pull down [her] pants, and he touches [her]," and that it had been happening for about a year. The Sunday school teacher informed the senior pastor about what A. V. had told her.

The church's senior pastor notified the police about possible child molestation. In a subsequent forensic interview, A. V. disclosed sexual abuse. The interviewer testified at trial that A. V. told him Shaughnessy "made her touch his penis, her butt,

his butt, that he touched her vagina on the inside and the outside and her anus on the inside and outside, and then he kisse[d] her on the lips." She provided details about those acts and the context in which they occurred, consistent with her developmental stage. A recording of that interview was played for the jury.

After law enforcement began investigating the allegations, Shaughnessy had a telephone conversation with his half-brother in which he stated that he "might have done something" and that "it might have something to do with his niece," which his half-brother took to mean A. v. Shaughnessy's half-brother became upset, and Shaughnessy continued, "well, a man's got needs." He also said, "I'm not exactly the brother you thought I was."

In later conversations with his wife from jail, Shaughnessy made statements that could be construed as admissions of culpability. They include: "What I did was a felony"; "I wish I'd never done what I did"; and that his half-brother was "spreading it around what I did." Recordings of those conversations were played to the jury.

2. *Analysis.*

Shaughnessy's sole claim of error is that he received constitutionally ineffective assistance. We disagree.

To prevail on this claim, Shaughnessy

4

must demonstrate both that his trial counsel's performance was professionally deficient and that he was prejudiced by this deficient performance. To establish deficient performance, [he] must show that trial counsel performed his duties in an objectively unreasonable way, considering all the circumstances and in light of prevailing professional norms. . . . To establish prejudice, [he] must prove that there is a reasonable probability that, but for his trial counsel's deficiency, the result of the trial would have been different.

*Bonner v. State*, __ Ga. __, __ (1) (__ SE2d __) (Case No. S22A0789, decided Aug. 23, 2022) (citations omitted). On appellate review, we "accept[ ] a trial court's factual findings and credibility determinations on an ineffectiveness claim unless they are clearly erroneous, but we apply legal principles to the facts de novo." Id. at __ (1) (citation and punctuation omitted).

Shaughnessy argues that he received ineffective assistance of counsel because his trial counsel chose not to cross-examine five of the state's witnesses: A. V.'s brother, to whom she made an outcry after the incident that was witnessed at church; a law enforcement officer who responded to the initial call from the church but then passed off the investigation to other officers; a person who witnessed the incident at church from the balcony; a person who was told of that church incident and reported it to the senior pastor; and Shaughnessy's half-brother.

5

At the hearing on Shaughnessy's motion for new trial, his trial counsel testified that he had fully investigated the case and was familiar with what the witnesses were going to say; in fact, he had cross-examined some of them in an earlier trial that had resulted in a mistrial. As to A. V.'s brother (who was 14 years old at the time of trial ), trial counsel explained that the witness "didn't have direct knowledge of [the abuse]," that his testimony on direct "wasn't super damaging," and that if he "could avoid cross-examining a kid, he [would]." As to the police officer, trial counsel had no specific memory but assumed that he "was more focused on the lead detective and not . . . an ancillary-type officer[.]" As to the witness who saw the incident during the church service and the witness who notified the senior pastor about that incident, trial counsel explained that he had no basis for impeaching their testimony and "just wanted to get them off the stand as quickly as possible" because, in his opinion, "cross-examination would do more damage than good." As to Shaughnessy's half-brother, trial counsel explained that he also wanted that witness "off the stand as fast as possible to draw the least attention to [his testimony]."

Generally, decisions about cross-examination are "grounded in trial tactics and strategy" and they "do not amount to deficient performance unless they are so unreasonable that no competent attorney would have made them under similar

6

circumstances." *Bonner*, __ Ga. at __ (2) (citations and punctuation omitted). "[W]e cannot say that trial counsel's strategy [regarding the cross-examination of these witnesses] was so unreasonable that no competent attorney would have chosen the same strategy[.]" *Swinson v. State*, 311 Ga. 48, 57 (3) (855 SE2d 629) (2021), disapproved in part on other grounds by *Outlaw v. State*, 311 Ga. 396, 402 (2) (b) n. 5 (858 SE2d 63) (2021). Moreover, Shaughnessy "has failed to demonstrate how cross-examination of these witnesses would have been helpful to him." *Bonner*, __ Ga. at (2). He merely argues in his appellate brief that the testimony of these witnesses "required a closer examination by trial counsel." And the evidence against Shaughnessy was overwhelming, especially given his recorded conversations from the jail. "In light of the evidence presented at trial, [Shaughnessy] cannot show a reasonable probability that the outcome of the trial would have been different if his trial counsel had [cross-examined the five witnesses.]" *Holland v. State*, 314 Ga. 181, 191 (3) (a) (875 SE2d 800) (2022).

For these reasons, Shaughnessy has shown neither deficient performance nor prejudice, and the trial court did not err in concluding that he did not receive ineffective assistance of counsel. See *Bonner*, __ Ga. at __ (2); *Holland*, 314 Ga. at 191 (3) (a).

*Judgment affirmed. Gobeil and Land, JJ., concur.*